Anthony J. Di Giovanna, J.
This is a motion to vacate an order of arrest on the ground that no statutory grounds for the issuance of the order existed in the first instance.
The complaint alleges that between July 20 and July 26, 1952 defendant represented to the plaintiff that he was the sole owner of an employment agency business and that the net income and profit accruing to him from the operation of the employment agency for a period from May 1,1951, to June 30,1952, amounted to $20,500.96 before taxes; that the office equipment and supplies *1048 belonged to the defendant personally and were fully paid for, and that none of such items was subject to chattel mortgage, lien, nor were any of them purchased under conditional sales contracts. Plaintiff then avers that in reliance upon said representations he agreed to purchase one half of the partnership interest for $9,000; that at the time of the completion of the transactions herein involved he [defendant] represented to the plaintiff that he had caused the license, to maintain and operate the business, to be issued in the name of the defendant’s wife; he further represented that his wife did not own the business or any part thereof and had no financial interest in the business and that he was using her name only for certain purposes set forth in the complaint; that thereupon a partnership agreement was made between the plaintiff and the defendant acting through his wife, and that the defendant completed the payment of the purchase price to the extent of $9,000; that thereupon the plaintiff took over the management and operation of the business; that within two months thereafter it developed that the substantial business as represented to the plaintiff by the defendant did not exist and consequently the branch office was closed ; that thereupon the plaintiff in accordance with the agreement and understanding arrived at between himself and the defendant took charge of the main office • that it became apparent that there was no substantial business of any kind thereat and that the income of the business was insufficient to pay the compensation agreed upon either for the plaintiff or for the defendant; that thereupon the plaintiff and defendant agreed to dissolve the partnership; and that the defendant agreed to pay to the plaintiff the sum of $12,000 by way of repayment of the $9,000 purchase price and payment of accrued salary and for other considerations. The plaintiff further says that pursuant to the agreement he received a series of 24 promissory notes each in the face amount of $500, totalling $12,000. Plaintiff says that the defendant represented to him, in order to induce him to accept that sum of $12,000, payable in the manner aforesaid, that he and his wife were the sole owners of their home and had been the sole owners for several years past; that the said home had a worth of more than $20,000, and that it was free and clear of mortgages; that it was not for sale, and that the defendant further represented that he was going to continue the employment agency business at that address thereafter. Plaintiff says that, relying upon the aforesaid representations and believing the same to be true in fact, the plaintiff agreed to accept the notes; that thereupon the dissolution agreement was prepared between this plaintiff and defendant, acting *1049 through his wife, and that the notes thereafter delivered to him were executed by defendant’s wife and indorsed by the defendant; that after the first five notes were paid the remainder of the notes were not paid; that thereupon the plaintiff elected to declare the remaining notes due and payable; that subsequent to this default the plaintiff caused an investigation to be made of the defendant’s affairs and ascertained that the income from the business for the period of May 1, 1951, to June 20, 1952, was not $20,500.96, as represented by the defendant; he ascertained that the agency had been operated by the defendant at a substantial loss and that the business constituted a blind and part of a scheme to cheat and defraud investors and others, including the plaintiff, out of their money. Further investigation showed that neither the defendant nor his wife owned their home; that the equipment used in the agency had not been paid for but had been acquired under conditional sales contracts and chattel mortgages; that thereafter the defendant had sold the business to one Benjamin Fruchtman instead of continuing it as he had represented he would. Plaintiff claims that the representations above set forth were false and untrue, were known to be false and untrue by the defendant and that they were made with an intent to defraud the plaintiff; whereupon, plaintiff seeks damages for fraud and deceit.
Assuming all of the facts in the complaint to be true, a good cause of action for fraud and deceit is stated. It is clear that in reliance upon the facts therein stated that plaintiff parted with $9,000. The allegations of discovery of the fraud concerned a period of time after the issuance of the notes and not before. The cause of action for fraud and deceit, therefore, arose after the issuance of the notes and the notes were not a settlement of the claim of fraud and deceit. That conclusion is based upon the assumed truth of the facts set forth in the complaint. The exhibit attached to the complaint showing the advertisement in the newspaper reads as follows: “ Partner for successful employment agey. Will train person in the business. $5,000 nec. Be 2-4797.” That advertisement was the thing which plaintiff claims first brought him into business transactions with the defendant. Exhibit B shows a compilation of figures seemingly indicating a profit of $19,412.96 for the period from May 1, 1951, to June 30, 1952. The averment is made in the complaint that this was a false figure. The exhibit marked “ D ” attached to the complaint is drawn on the letterhead of the agency and signed by the defendant, and acknowledges that the plaintiff had placed with him the sum pf $200 as a binder and the statement is made therein, “ This *1050 binder is to guarantee that I. J. Haley will enter into a full partnership with James Keenan in the ownership * * * and upon assuming said duties and responsibilities and signing of contract entering in said partnership I. J. Haley will place in the possession of James Keenan the sum of $9,000 ”. This was signed by James Keenan and not by his wife. This has a tendency on the face of it to substantiate the claim of the plaintiff that he dealt with the defendant as a partner and not with the defendant’s wife. The partnership agreement attached to the papers, of course, is signed by the plaintiff and the defendant’s wife. Appended to that agreement is a letter dated August 1, 1952, signed by the defendant wherein he guarantees the plaintiff against any losses in the event of the revocation of his wife’s license or in the event that she refuses to or is incapable of any and all acts necessary to obtain her license. It is clear that this paper is intended to constitute an absolute and unconditional guarantee making the defendant a primary obligor and not merely a conditional guarantor.
The affidavit of the plaintiff attached to the moving papers substantiates factually the allegations of the complaint. Consequently, the issuance of the warrant in the first instance was within the intendment and meaning of subdivision 5 of section 826 of the Civil Practice Act. The positive averment is made in paragraph 14 as follows: “ At a conference just prior to going to Mr. Albert’s office, the defendant stated to me that while it was true that he was the owner of the employment agency business operated at the Fulton Street and Park Bow addresses, his wife, Bose Keenan, was the one in whose name the license to engage in the employment agency business, had been issued. I then asked the defendant the reason for that. He thereupon stated to me that he had, prior to going into the business for himself, been employed by Morley Employment Agency for upwards of four years, and that if the Morley Agency would learn that he was in business for himself and that the agency license for that business had been issued in his name, that the Morley concern would bring about the cancellation of such a license and therefore, in order to avoid such a difficulty, he caused the agency license to be issued in his wife’s name and that it was so issued, and that she, his wife, did not own and had nothing to do with the business.” That is a positive averment of fact which, if untrue when made and if made with an intent to induce the plaintiff to enter into the arrangement, would constitute an act of fraud and deceit. Also, positive averment is made in paragraph 23 that, “ Thereupon this defendant stated to Mr. Albert in my presence that he and *1051 Ms wife owned their home * * #; that it was worth upwards of Twenty Thousand ($20,000) Dollars; that it was free and clear of mortgage liens and that he wanted to keep the property free and clear, and therefore would not give any mortgage on the property as requested by Mr. Albert. ’ ’ This statement was made in response to plaintiff’s request in the course of the dissolution proceedings for a mortgage on the property to guarantee the payment of the notes. Plaintiff says that this statement of the value of the house and the ownership was made by the defendant with an intent to induce him to accept the promissory notes without security; that he thereafter learned of the falsity of those facts and that had he known those facts to be false, he would not have accepted the notes in settlement of the differences between the parties. This again constitutes a good cause of action for fraud and deceit.
Plaintiff avers further in his affidavit that after these transactions were completed between him and the defendant, the defendant sold the business to another for a substantial sum of money upon the same representations that he had made to the plaintiff and that the other purchaser also lost all of his investment. This tends to substantiate the claim of the plaintiff, as set forth in the complaint, that the defendant had conspired with his wife to cheat and defraud the plaintiff.
In paragraph 27 of the affidavit, the plaintiff makes the positive averment that he has since learned that neither the defendant nor his wife own the house; that defendant had left the State and had gone to various places mentioned in the affidavit, and that the defendant was being personally sought by many other creditors mentioned in the affidavit, including Internal Revenue agents; that defendant had sent to the plaintiff several typewritten letters bearing no return address but postmarked “ Chicago, Illinois.” There are many other allegations in the moving papers.
The court feels that this affidavit, together with the complaint, fully justifies the issuance of the original order of arrest.
The present application is based upon an affidavit by the defendant wherein he says that he was continuously in the city of New York and always at the address of another employment agency. The defendant further says that he indorsed the notes only for accommodation purposes and that he had nothing to do with any of the transactions. That is another contradiction of the averments in the plaintiff’s complaint and affidavit and raises issue for the trial but does not completely overcome the prima facie effect of the plaintiff’s papers upon which the order of arrest was based. Defendant says that the plaintiff never. *1052 asked for, and defendant never gave to the plaintiff, a financial statement; that the exhibits supplied by the defendant were never given to the plaintiff by him. That is in express contradiction of the averments of the complaint and affidavits. While that is an issue to be determined in the case, the court in examining these financial statements notices on Exhibí B the words, “ Drawings-Keenan. ’ ’ The signature of James Keenan appears at the bottom of Exhibit D, the binder between the defendant and the plaintiff drawn on the employment agency letterhead. The court fails to see any substantial difference in the writing of the name ‘ ‘ Keenan ’ ’ on the binder and the financial statement. The same name appears on the affidavit of the defendant and again appears to be similar. On page 4 of the affidavit, the defendant claims that the plaintiff alleges that the partnership agreement was signed by the defendant, his wife and the plaintiff. That is not so alleged by the plaintiff. The plaintiff has alleged that the partnership agreement was signed by defendant’s wife and the plaintiff but that the binder was signed by the defendant, wherein it is agreed that “ I. J. Haley will enter into a full partnership with James Keenan.” The defendant further states that he never told the plaintiff that he owned the Cambria Heights house. That is an issue of fact for the trial. On the face of the allegation of the complaint, it must be deemed to be true that he did tell him so.
Attached to the reply affidavit of the plaintiff on this motion to vacate is an affidavit of the defendant’s wife. She makes the positive statement that she never worked in any employment agency; that she was never interested in any such business, and that the business was always owned entirely by her husband, and that the reason he could not get a license to carry on the business was because he had a criminal record; that immediately upon her receipt of a license, she gave her husband a power of attorney to sign checks and transact all business; that she never participated in any negotiations with Mr. Haley; that the defendant handled everything; that she went to the office of defendant’s attorney when asked to do so and signed the necessary papers; that she signed the dissolution papers when no one was present and that she herself took them before a notary public; that after they sold their Massapequa home she and the children went to live with her parents and the defendant in California, post haste; that when they arrived in California her husband told her they were going to use a different n&me; and many other serious allegations against her husband which tend to discredit him as well as to substantiate the claims of the plaintiff.
*1053 The court finds that the issuance of the warrant of arrest was proper and that it should not be disturbed. There are issues of fact to be tried in this case. The law does not require the vacating of an order of arrest merely because issues of fact are raised. The law does not require that in order for an order of arrest to continue it must appear that the plaintiff cannot lose the case. It is sufficient that the complaint states a prima facie cause of action and the allegations of the affidavit factually substantiate the complaint.
The case of Scharff v. Scharff (132 N. Y. S. 2d 874), which is claimed to be a leading case although decided only at Special Term, is not decisive of the issue herein. Here, the plaintiff claims that he was induced to accept the notes because of false representations of material facts. Consequently, that portion of the motion which seeks to vacate the order of arrest is denied; that portion of the motion which seeks to modify the amount of bail required to be posted by the defendant is disposed of by reducing the amount from $10,000 to $6,000. The plaintiff will be required to increase the amount of his security from $250 to $750. Settle order on notice.